## Case No. 2,677.

### CHILDS v. CORP.

[1 Paine, 285.][1]

Circuit Court, D. Vermont. Oct. Term, 1810.

BILL OF EXCHANGE—LOSS BY REASON OF BAILEE'S NEGLIGENCE.

The defendant had sold the complainant a bill of exchange on a house in London. and received the complainant's note for the price, but kept the bill by agreement. as security for its payment. The bill was protested, the drawers became bankrupt, and dividends were declared upon their estates. The defendant refused to return the bill to the complainant, but made no effort to recover the amount or to obtain the dividends. He was held liable for any loss that might have happened by such negligence.

[In equity. Cross bill by Francis Childs against Samuel Corp.]

D. Farrand and E. Keyes. for complainant. S. Hitchcock and A. Foote, for defendant.

LIVINGSTON. Circuit Justice. The object of this cross bill is to have a credit on the mortgage mentioned in the pleadings in this cause. for the amount of a certain bill of exchange for one thousand pounds sterling. which it is alleged. has been lost to the complainant by the negligence of the defendant.

It appears, that on the 29th November.

[1] [Reported by Elijah Paine. Jr., Esq.]

1803, the defendant sold to the complainant a bill of exchange for one thousand pounds sterling, which had been drawn by Robert Bird & Co. of New York, on Bird, Savage & Bird, of London, (both houses composed of the same persons,) and which had been protested for non-acceptance and non-payment. For this bill the complainant gave the defendant his promissory note for three thousand four hundred and eighteen dollars and seventy-nine cents, payable in the July following. The bill remained in the hands of the defendant, who gave his receipt for it, promising to return it to the complainant on due payment of his note. The note not being paid, the complainant was sued, and judgment obtained against him; after which, to secure the amount of the judgment, and some other demands, he gave the defendant three other promissory notes, dated the 8th of October, 1805, for one thousand seven hundred and forty-nine dollars and ninety-eight cents, each payable the 1st of April, 1806, 7, and 8, with interest, and executed a mortgage on certain real estate in Vermont. On the execution of this mortgage the receipt above-mentioned was given up, but the bill remained in the defendant's hands, without any written agreement respecting it.

Thus far there is no dispute about facts between the parties. The complainant asserts, that he expected the defendant would have delivered him the bill on receiving the new securities, but that he refused to do so, agreeing, however, that he would hold it for his benefit, and endeavour to collect the money due thereon for his use; which he neglected to do, to the great loss of the complainant. The defendant admits, that the bill remained with him as "a further security for the monies due from the complainant, until the same were paid by the complainant, or by the receipt of monies on the bill, which he was authorized to receive and apply toward his demands against the complainant," but denies, that "he was obliged to use any endeavours or be at any trouble or expense in endeavouring to collect the bill." Without stating that he had taken any measures to obtain payment, he alleges, that he was unable to do so by reason of the insolvency of the parties to it. It becomes necessary, then, to recur to the testimony, to ascertain the understanding of the parties at the time of leaving this bill with the defendant, which must determine the obligation and duty thereby imposed on him. In settling this question, the defendant's letter of the 9th of April, 1805, to his attorney, Mr. Foote, has been thought material. In this he desires Mr. Foote to take up the receipt he had given to the complainant, adding, "that it was understood, and he meant thereby to have it understood by his attorney and Mr. Childs, that whatever he might recover on said bill should be for his benefit."

Without going further, it would be very difficult to say that the defendant was at liberty to be entirely passive about the recovery of the monies due on this bill of exchange. He resided in the city of New-York, and the complainant at Colchester, in Vermont, at the distance of more than three hundred miles from each other. By consenting to retain the bill, and apply what was received on it to the complainant's credit, he put it out of the power of the latter to use any diligence for its recovery. The complainant, without the bill or protest, which was also in the defendant's hands, could not prove any debt, either under the commission against the house in England, or under the separate commission against Robert Bird in this country. He could not but believe that the defendant would do thus much, at least, or return him the bill, to enable him to do it himself. He could not suppose,—nor could it have been the intention or understanding of those gentlemen,—that the bill was to remain among the papers of the defendant, without a single effort on his part to secure to himself the dividends which might be declared on it—which must have been the sole object of his retaining it. If he found the trouble or expense too great, he should have relinquished his agency, and apprized the complainant of his unwillingness to incur either; and means might then have been taken by the complainant to prevent the loss which it is alleged has happened. But if, from the very nature of the transaction, some diligence was not imposed on the defendant, the testimony of Peaslee and Henry seems to remove every doubt. The first, who was employed by the complainant to come to some arrangement with the defendant, and who is mentioned in his letter to Mr. Foote as the person with whom he had a good deal of conversation on Mr. Childs' concerns, says, that the defendant "retained the bill in his own hands, and that it was an understanding between Mr. Corp and himself, that he was to act upon the bill, and to account to Childs for whatever the bill might nett." In another place he says, "he was directed by Mr. Childs to make a regular demand of the bill, but he did not, because Mr. Corp inclined to hold the bill: from whom he understood, that he would act for Mr. Childs, and collect what he could of the bill, and account with him for whatever he should collect." The other witness is not less explicit. Mr. Henry says, "that in 1807, two years after the interview between Mr. Corp and Mr. Peaslee, he called on him, at the request of Mr. Childs, and informed him, that it was his wish to have the bill, in order to obtain a dividend, which the witness had learned was declared on all the debts of the company; but the defendant declined giving it to him, alleging, that he would endeavour to obtain the dividend himself, and would

not give out of his hands any security he had."

The court is bound to conclude from this testimony, as well as from the internal evidence of the transaction, that the defendant was considered by the complainant, and was regarded by himself, as his .agent to act for him, as the witness expresses it, and to ·collect what might become due on this bill. Whether he were obliged to sue, or to attach property of the drawers, or not, it is unnecessary to say, because that is not the negligence imputed to him; but the court is of opinion, that with the full knowledge which he had of their bankruptcy, it was at least his duty to have used that ordinary diligence and care which no man, however negligent, would have omitted in his own concerns, that of proving the debt, and thus taking a chance of dividends which might be made. This was the only way left to collect any thing, and certainly when he promised to act for the complainant, and to endeavour to obtain the dividends, nothing short of this could be a compliance with his engagement. The trouble of such a step would be trifling, and the expense very inconsiderable. The court, however, does not think with the defendant's counsel, that Mr. Corp has made himself liable for the whole bill, but only for so much of it as shall appear to have been lost by his negligence. Such an indemnity is all the complainant can ask, and beyond this a court of equity will not readily go. It is impossible, however, from any evidence before us to say what credit the complainant is entitled to on his mortgage. The depositions of Mr. McCall and Mr. Henry, leave it too uncertain what might have been received, without some further inquiry. The court, therefore, before a final decree, thinks it proper to refer it to the master to report what dividends have been declared and paid to persons holding bills of exchange drawn by Robert Bird & Co. in this country on Bird, Savage & Bird in England, and not accepted by them, either by the assignees of the latter, or by those of Robert Bird, and to reserve all further directions until the coming in of his report.